# RESPONSE EXHIBIT D

Case 3:12-cv-00033-GMG   Document 12-4   Filed 06/26/12   Page 1 of 13   PageID #: 361

# PAULSON & NACE
ATTORNEYS AT LAW

~~rd~~ S. Paulson (1929-1986)

Barry J. Nace (DC, MD, PA, WV)
CERTIFIED IN CIVIL TRIAL ADVOCACY
BY THE NATIONAL BOARD OF TRIAL ADVOCACY
CERTIFIED IN MEDICAL MALPRACTICE
BY THE AMERICAN BOARD OF PROFFESSIONAL
LIABILITY ATTORNEYS

1615 New Hampshire Avenue, NW
Washington, DC 20009-2520
Phone (202) 463-1999
Fax (202) 223-6824
www.paulsonandnace.com

Christopher T. Nace (DC, MD, GA)
Jonathan B. Nace (DC, MD)
Matthew A. Nace (MD)

August 11, 2009

AUG 12 2009

**Via U.S. Mail**
Jessica H. Donahue, Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
2008 Kanawha Boulevard, East
Charleston, WV 25311

    RE:    ***Complaint of Robert W. Trumble, Esq.***
            ***I.D. No.: 09-05-353, WVSB #7313***

Dear Ms. Donahue:

    This is a response to your letter of July 16, 2009, which I received on July 20, 2009. I understand that a Complaint has been made against me by Robert W. Trumble, Esq. of Martinsburg, WV, and in the Complaint he states that he "as Trustee of the bankruptcy estate of Barbara Miller, employed D. Michael Burke and Barry J. Nace to serve as special counsel for the Trustee in connection with the pursuit of Barbara Miller's medical malpractice/personal injury claim in the Circuit Court of Berkeley County, West Virginia." He then refers to the medical malpractice case that was tried before a jury in 2007, resulting in a rejection of an appeal of the defendant on February 12, 2008. He then goes on to state that "Mr. Nace and/or Mr. Burke distributed the proceeds of that judgment, after taking their contingent fee, without regard to the bankruptcy estate or Mr. Nace's and Mr. Burke's attorney/client relationship with the undersigned as trustee for Mrs. Miller's bankruptcy estate." He then attaches a certain letter with accompanying affidavits.

    I have been in practice since 1969, roughly 40 years. And I have at no time had a disciplinary action taken against me. In my view, Mr. Trumble, whom I never met, is in error. Further, the apparent attorney for the debtor, Barbara A. Miller, a William A. O'Brien, also in Martinsburg is someone whom I have never met.

    I have served the Bar in many voluntary capacities including most recently as President of the National Board of Legal Specialty Certification, as President of the Association of Trial Lawyers of America, as twice President of the District of Columbia Trial Lawyers Association, have been appointed for two terms by the District of Columbia Court of Appeals to serve on the Unauthorized Practice of Law Committee, served as guardian and estate attorney on numerous occasions for no fee in addition to many other volunteer services during my career. I am truly shocked at Mr. Trumble's threats and misuse of the judicial process because of his own apparent lack of diligence, as he now attempts to hold me responsible for his failures leading to my lack of

**0053**

ROCKVILLE, MARYLAND                       WASHINGTON, DC                       MARTINSBURG, WEST VIRGINIA

knowledge, and then not even having the decency to telephone me and inform me of his complaint. If he has a complaint, then the proper recourse is to file suit against me.

Instead, I have been referred to Rules 2.4 and 2.5 of the Rules of Lawyer Disciplinary Procedure and Rules 1.15(b), 1.4(a), and 8.4(d) of the Rules of Professional Conduct. I understand Rules 2.4 and 2.5 deals with confidentiality and Privilege and immunity, Rules 1.15(b) and 1.4(a) concern safe-keeping of another's property, and 8.4 involves conduct prejudicial to the administration of justice. Let me be clear. First, I was never aware that I had any property of Mr. Trumble's nor have I done anything to affect the proper administration of justice.

More Importantly, Mr. Trumble has not provided all of the facts in his case which would show that I have not knowingly broken any ethics rules. Those facts show that I was never made aware that Mr. Trumble was my client; nor that I was ever provided any Order granting Mr. Trumble's Trustee Application; nor did I ever represent Mrs. Miller in any vehicular accident.

1. Mr. Trumble apparently sent a letter on October 26, 2004 to Mark Jenkinson, an attorney with Burke, Schultz, Harman & Jenkinson, concerning Barbara A. Miller. *I neither knew nor represented Barbara A. Miller at that time. I never saw that letter until it was provided to me with your packet of information dated July 16, 2009.*

2. Associated with that letter was a document signed by Barbara A. Miller on October 21, 2003, witnessed by attorney William A. O'Brien, which *I also never saw until such was provided to me through your letter of July 16, 2009.*

3. On July 11, 2005, Mr. Trumble sent a letter to Mr. Burke associated with Burke, Schultz, Harman & Jenkinson concerning Barbara A. Miller advising him of a bankruptcy case. *I never saw that letter until it was provided with your attachments on July 16, 2009.*

4. I did represent Mrs. Miller in a malpractice action, *but not in any other kind of action*, such as a "vehicular accident" as referred to by Mr. Trumble.

5. In a letter dated October 10, 2008, Mr. Trumble sent a letter to D. Michael Burke at Burke, Schultz, Harman & Jenkinson and to me at 1814 "North" Street, NW in Washington, D.C. I am not now and never have been at such an address. My address until approximately 2005 was 1814 "N" Street, NW. *I never saw such a letter.* I understand Mr. Burke never received it either.

Jessica H. Donahue, Lawyer Disciplinary Counsel
August 11, 2009
Page 3 of 7

6. On November 14, 2008, approximately one month later I received a letter sent to my correct address stating that it was a "Second Request". To me it was a First Request.

7. I responded to Mr. Trumble on December 1, 2008, explaining that I had never seen the October 10 letter, because he had sent it to the wrong address and most likely it was sent back to him.

8. Notwithstanding that he indicated that there had been documents attached to that October 10 letter, not only did I not receive the letter, I also didn't receive any documents of the November 14 letter as I pointed out in my December 1 letter to him, attached hereto. (Attachment 1) I asked that he send me whatever documentation that he had that supported his statements and I also asked what the debtor's allowable exemption was. I did not know anything about the issue.

9. Further, Mr. Burke with whom Mr. Trumble apparently sent letters, had not been involved in the Barbara A. Miller malpractice case for several years because of a conflict.

10. In order to prevail for Mrs. Miller, I had advanced costs of about $75,000.00. Nothing was contributed by Mr. Trumble or any debtor/creditor or Mr. O'Brien. I never heard from either of them. I was <u>subsequently</u> sent the information that was attached to what I was sent by your office.

11. On January 27, 2005, Mr. Trumble, through his certified legal assistant sent a letter to me and Mr. Burke asking us to sign an affidavit.

12. I did so, routinely, and saw no other document nor heard anything else about the matter.

13. <u>Apparently</u> Mr. Trumble filed a trustee application to employ special counsel.

14. *I did not receive a copy of the trustee application to employ special counsel, which I subsequently learned existed.*

15. That "application" in ¶2 asked for permission to employ Mr. Burke and myself as legal counsel to "pursue the Debtor's personal injury claim as a result of a *vehicular accident...*" I do not do vehicular accident cases, and would not have done so in this case. Mr. Burke does do such cases.

16. In fact, I was never asked to do any vehicular accident case for Mrs. Miller. Had I been sent a copy of the trustee's application asking me to do a vehicular accident case, I would have withdrawn from such employment immediately.

17. I subsequently received an Order *that I saw for the first time in 2009*, signed by a bankruptcy judge apparently on March 4, 2005. I never saw this document before 2009.

18. I had no knowledge that an Order was signed that I was hired to represent the trustee of the estate of Barbara A. Miller in any vehicular accident, nor for that matter in any malpractice action, or any other kind of action.

19. In addition, I never received any correspondence from Mr. Trumble or Mr. O'Brien until November 14, 2008.

20. Instead, for the first time on January 5, 2009, I was informed by Mr. Trumble that I had "been employed" to represent the trustee's interest. He asserted to me for the first time that I had violated my duty to him as a client and made certain threats against me as set forth in the January 5 letter.

21. My file on the underlying malpractice case consumes several boxes and the correspondence file is about four (4) inches thick.

22. Reviewing my file, I received no correspondence from Mr. Trumble until November of 2008 after January of 2005. Nor have I ever received any correspondence from Mr. O'Brien.

23. I responded to Mr. Trumble on February 4, 2009, after he made threats to me, and set forth much of what is enclosed herewith. I pointed out in that letter that he had never sent me anything. I had no idea what the amount of the debt was and I pointed out to Mr. Trumble that it had appeared that he had done nothing during the entire time that I was representing Mrs. Miller who was administratrix of her husband's estate.

24. Notwithstanding that the case was in the newspaper, nothing was heard from Mr. Trumble (or Mr. O'Brien) and as I stated in my letter to Mr. Trumble, "I did not represent Ms. Miller in a vehicular accident, I did not receive notice from [him] that [he] had filed the "application", I did not receive notice from [him] or the Court that the Order had been granted, and I had heard nothing from [him] since sometime apparently in February of 2005 until long after the proceeds had been distributed pursuant to the jury's verdict in medical malpractice claim and the decision of the Supreme Court.

25. Indeed, final distribution took place about March 5, 2008. The distribution paid costs, fees, and the balance went to Mrs. Miller at this time, individually and as personal representative of the Estate of Paul Miller, deceased. (Attachment 2) I retained no money thereafter as I had no reason to believe I should be sending anything to Mr. Trumble.

26. I further pointed out that he had not given me any notice that any Order had been granted; I had no knowledge that I was representing him, I did not represent Mrs. Miller in any vehicular accident, and I was not aware that he was my client.

27. I questioned whether Mr. Trumble had done what he was assigned to do, because he never checked the file in the case, never corresponded with me, never sent reports to my office and yet he was threatening me.

28. To this day, he has not informed me of the amount about which he is talking.

29. It appeared to me that he had made some mistakes and was trying to blame it on me.

30. I am not a bankruptcy lawyer.

31. I do not deal with bankruptcy cases and I don't think I ever had one in my entire career, nor been involved in one where my client was in bankruptcy.

32. I don't generally handle auto accident cases and have never handled one in West Virginia.

33. I follow Court Orders when they are sent to me and none were sent to me.

34. It is my view that this complaint is fictitious and merely an attempt for Mr. Trumble to try to right his own wrong. It would have been easy for him to ask Mrs. Miller for the money. He could have inquired with the bankruptcy attorney, Mr. O'Brien, from whom I never heard anything because he must have been aware of what was going on, but rather Mr. Trumble chose to do nothing and then many, many months after the fact tried to blame me and then did it by sending a letter to the wrong address (and as I understand, not even sending the letter to Mr. Burke).

35. To this day, Mr. Trumble has not even contacted me to try to discuss the matter.

36. I still do not know what the complaint is or how much Mr. Trumble thinks should have been submitted to him and he has not yet filed suit against me, perhaps because he knows he has no case.

37. I would defend such case vigorously.

38. Unfortunately, Mr. Trumble seems to be more interested in criticizing me and trying to affect my reputation, then doing his own job as he should have.

39. Mr. Trumble never in four years contacted my office for any report on the subject.

40. Not until 2009 did I receive a copy of – nor was aware of any Order from the Bankruptcy Court concerning employment in any case for Mrs. Miller and never have I received any Order for any representation in a medical malpractice case.

41. Further, the contract of employment and authority to represent that was signed on February 4, 2004 and attached to the "Trustee's Application…" does not include my name.

42. In summary, I was never informed by Mr. Trumble, Mr. O'Brien, or any Court that I was in fact hired to represent Mr. Trumble until 2009 long after the case was resolved; I was never aware that any funds received by me on any malpractice case four years after Mr. Trumble filed his Application was in any way controlled by any bankruptcy proceeding, and Mr. Trumble (nor Mr. O'Brien) never contacted my office after February 2004 until long after distribution was made. I then, to my knowledge, never had any of Mr. Trumble's funds.

43. Further, in 2006 I reached a partial settlement with one defendant in the case for $75,000.00 and made a distribution of those settlement funds to Barbara Miller, not knowing then anything about a bankruptcy. (Attachment 3) Indeed, Mrs. Miller never mentioned anything about a bankruptcy to me, nor had her bankruptcy attorney, Mr. O'Brien, ever contacted me. Had I been aware then or at any time that she was in bankruptcy proceedings, I would have done what ever I was Ordered to do by the Court.

44. I have never asked a client if they are in bankruptcy. It is not something a plaintiff's lawyer in a medical malpractice case would routinely do.

45. Further, Mrs. Miller was sent a check on about March 5 from my escrow account, payable to herself and her as Administratrix of her husband's Estate.

46. In summary, I was never aware that Mr. Trumble was my client – as he is aware, nor was I ever aware that there was ever an Order appointing me anything, nor was I ever involved in any vehicular accident case on behalf of Mrs. Miller, nor was any claim ever filed with the Estate of which Mrs. Miller was the Administratrix, nor did I represent Mrs. Miller in any Estate proceeding. I never was aware that I allegedly had any of Mr. Trumble's funds or property; and I have not knowingly done anything to interfere with the proper administration of justice.

Very truly yours,

Barry J. Nace

Encls.

Subscribed and sworn to me on this 11th day of August, 2009.

Brandi Burrell

BRANDI C. BURRELL
Notary Public, District of Columbia
My Commission Expires Feb 28, 2014

0059

# PAULSON & NACE
ATTORNEYS AT LAW

Richard S. Paulson (1929-1986)

Barry J. Nace (DC, MD, PA, WV)
CERTIFIED IN CIVIL TRIAL ADVOCACY
BY THE NATIONAL BOARD OF TRIAL ADVOCACY
CERTIFIED IN MEDICAL MALPRACTICE
BY THE AMERICAN BOARD OF PROFFESSIONAL
LIABILITY ATTORNEYS

1615 New Hampshire Avenue, NW
Washington, DC 20009-2520
Phone (202) 463-1999
Fax (202) 223-6824
www.paulsonandnace.com

Christopher T. Nace (DC, MD, GA)

Jonathan B. Nace (MD)

December 1, 2008

**Via U.S. Mail**
Robert W. Trumble, Trustee
McNeer, Highland, McMunn & Varner, LC
275 Aikens Center
P.O. Box 2509
Martinsburg, WV 25402-2509

RE: **Miller, Barbara A.**

Dear Mr. Trumble:

In response to your letter of November 14, 2008, entitled "SECOND REQUEST", this is to advise you that I did not get a "FIRST REQUEST". You attached a letter of October 10, 2008, which I did not receive, perhaps that is because you have the wrong address on your October 10, 2008 letter, which you attached to the November 14, 2008 letter, which you can see simply by looking at the November 14, 2008 letter. Your letter of November 14, 2008 arrived when I was in trial in front of Judge Silver in Martinsburg, which trial ended on Tuesday, November 25, 2008.

Moreover, as I look at the October 10 letter, there was nothing attached. Please send the attachments.

Further, looking at your October 10 letter you stated that you had contacted my office to obtain a status of the case. Someone called me several months ago on the telephone and I talked to them and it may have been you. I told that person, whether it was you or someone else, that there was not any settlement and that the case was tried to jury verdict and then went on appeal and reported by the Court of Appeals when they declined to accept the defendants' petition. I am not sure why you would expect us to contact you to obtain authority as to a settlement since there was no settlement.

I will attempt to collect the information you want, but I would ask also that you send me whatever documentation supporting your statements made in your letter of October 10, 2008 and which gives you the authority to make the request that you made.

ROCKVILLE, MARYLAND          WASHINGTON, DC          MARTINSBURG

0060

EXHIBIT

Also, please advise as to the "debtors allowable exemption". Thank you.

Very truly yours,

*[signature]*

Barry J. Nace, Esq.

BJN/bcb

| REFERENCE NO. | DESCRIPTION | INVOICE DATE | INVOICE AMOUNT | DISCOUNT TAKEN | AMOUNT PAID |
|---|---|---|---|---|---|
| | Miller, Paul | | | | 220,467.45 |

| CHECK DATE | CHECK NO. | PAYEE | DISCOUNTS TAKEN | CHECK AMOUNT |
|---|---|---|---|---|
| 3/5/08 | 2051 | BARBARA MILLER, INDIVIDUALLY | | $220,467.45 |

**BARRY J. NACE**
**DBA PAULSON & NACE**
**ESCROW ACCOUNT**
1615 NEW HAMPSHIRE AVENUE NW
WASHINGTON, DC 20009-2520

UNITED BANK
68-444/560

2051

Check Number: 2051

DATE Mar 5, 2008

AMOUNT

Two Hundred Twenty Thousand Four Hundred Sixty-Seven and 45/100 Dollars    $ 220467.45

PAY TO THE ORDER OF:

BARBARA MILLER, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF PAUL MILLER,
DECEASED

AUTHORIZED SIGNATURE

⑈002051⑈ ⑆056004445⑆ 3010033505⑈

0062

EXHIBIT

| BARRY J. NACE | REMITTANCE ADVICE | 68-444/560 |
|---|---|---|
| DBA PAULSON & NACE ESCROW ACCOUNT 1814 N STREET NW WASHINGTON, DC 20036-2404 | | **1484** |

PAY **Ten thousand one hundred twenty-six and 16/100** DOLLARS

| DATE | TO THE ORDER OF | DESCRIPTION | CHECK NO. | CHECK AMOUNT |
|---|---|---|---|---|
| 10/2/96 | Barbara Mielio | Miller, P. Respond 1484 | | $10,126.16 |

UNITED BANK

⑈⑈001484⑈⑈ ⑆056004445⑆ 3010033505⑈⑈

SECURITY FEATURES: MICRO PRINT BORDERS - COLORED BRICK PATTERN - WATERMARK & CARBON STRIP ON REVERSE SIDE - MISSING FEATURE INDICATES A COPY

0063

EXHIBIT 3

# PAULSON & NACE
ATTORNEYS AT LAW

Richard S. Paulson (1929-1986)
Barry J. Nace (DC, MD, PA, WV)*
*CERTIFIED IN CIVIL TRIAL ADVOCACY
BY THE NATIONAL BOARD OF TRIAL ADVOCACY

Gabriel A. Assaad (DC, VA)

1615 New Hampshire Avenue, NW
Washington, DC 20009-2520
Phone (202) 463-1999
Fax (202) 223-6824
E-mail p&n@lawtort.com
www.paulsonandnace.com

**Maryland Office**
31 Wood Lane
Rockville, MD 20850-2228
Phone (202) 463-1999

**West Virginia Office**
85 Aikens Center
P.O. Box 1938
Martinsburg, WV 25401
Phone (202) 463-1999

## STATEMENT OF ACCOUNT
## PAUL MILLER

| | |
|---|---:|
| GROSS SETTLEMENT | $ 75,000.00 |
| LESS ATTORNEY FEES | 30,000.00 |
| LESS EXPENSES DUE PAULSON AND NACE | 27,373.84 |
| LESS RETAINER FOR FUTURE EXPENSES | 7,500.00 |
| NET PROCEEDS TO CLIENT | $ 10,126.16 |

APPROVED:

_Barbara Miller_ (signature)                              9/27/06
BARBARA MILLER, INDIVIDUALLY                             DATE
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF PAUL MILLER, DECEASED


_____                    _____
BARRY J. NACE                               DATE

0064