# RESPONSE EXHIBIT E



# BENNINGER LAW

PROFESSIONAL LIMITED LIABILITY COMPANY



October 4, 2011

Rory L. Perry II, Clerk
West Virginia Supreme Court of Appeals
1900 Kanawha Boulevard, East
East Wing, Room 317, State Capitol
Charleston, WV 25305-0881

**Re:** ***Barry J. Nace, Esquire, a member of the West Virginia State Bar***
**Bar No. 7313**
**Supreme Court No. 11-0812**
**I.D. No. 09-05-353**

Dear Mr. Perry:

Please file the enclosed ***Respondent Barry J. Nace's Motion to Dismiss Statement of Charges*** in the above-referenced action. Copies of same have been served on the Hearing Panel Subcommittee and the Office of Disciplinary Counsel.

Thank you for your assistance.

Very truly yours,

J. Michael Benninger
mike@benningerlaw.com

JMB/hlk

Enclosure

cc:   Jessica H. Donahue (w/enclosures)
      Debra A. Kilgore, Esquire (w/enclosures)
      Sean D. Francisco, Esquire (w/enclosures)
      Ms. Cynthia L. Pyles (w/enclosures)
      Barry J. Nace, Esquire (w/enclosures)

(WEB) WWW.BENNINGERLAW.COM

(OFFICE) 154 PLEASANT STREET, MORGANTOWN, WV 26505 • (MAIL) P.O. BOX 623, MORGANTOWN, WV 26507
(T) 304.241.1856     (F) 304.241.1857



**BEFORE THE HEARING PANEL SUBCOMMITTEE
OF THE
LAWYER DISCIPLINARY BOARD**

Re:  **BARRY J. NACE, ESQUIRE**          **Bar No. 7313**
     **a member of the West Virginia**    **Supreme Court No. 11-0812**
     **State Bar**

### RESPONDENT BARRY J. NACE'S MOTION
### TO DISMISS STATEMENT OF CHARGES

Now comes Respondent Barry J. Nace, by counsel,

J. Michael Benninger, and moves the Hearing Subcommittee to

recommend dismissal of the pending Statement of Charges in its

entirety for the following reasons:

1.   The evidence, including all testimony and

documents produced and disclosed to date by ODC does not

establish any knowing or intentional violation of any of the

West Virginia Rules of Professional Conduct cited in the

Statement of Charges filed on May 17, 2011.  (Rules 1.1, 1.3,

1.4(a), 1.4(b), 1.5(a), 1.15(b), 8.4(c) and 8.4(d)).

2.   The evidence and circumstances taken and

carefully considered in total establish only that Respondent

Nace was actually unaware, until receiving Mr. Trumble's

correspondence dated November 14, 2008, that there was an issue

with regard to his being formally appointed by the Bankruptcy

Court by Order entered March 4, 2005, as counsel for the

Trustee.

3.    Respondent Nace was not provided the relevant bankruptcy documents even though Mr. Trumble certified to the Bankruptcy Court in Trustee's Application to Employ Special Counsel filed on March 3, 2005, that, "I hereby certify that a true and correct copy of the foregoing has been furnished, by U. S. Mail, postage prepaid, to ...; to Barry J. Nace, Esquire, Paulson & Nace, 1814 N. Street Northwest, Washington, DC 20036...." It was not until Respondent Nace received Mr. Trumble's correspondence dated January 5, 2009, that he was ever actually provided the Bankruptcy Court Order entered on March 4, 2005, granting the Trustee's application.

4.    Mr. Trumble readily acknowledged under oath during his recent deposition on March 21, 2011, in the legal malpractice case he filed against Respondent Nace in the Adversary Proceeding in Ms. Miller's Bankruptcy case that he had no correspondence between him and Mr. Nace after the order was entered by the Bankruptcy Court on March 4, 2005 (Trumble Deposition Transcript, p. 43). Mr. Trumble further acknowledged that he did not have any correspondence with Mr. Nace until October 10, 2008 (Trumble Deposition Transcript, p. 43). In summary, Mr. Trumble testified truthfully under oath when he answered the following questions and answers:

> Q.    Okay.  Did you ever send Mr. Nace a
>        copy of the order allowing you to
>        employ him as special counsel?

> A.    I don't have any—I don't have any
>       knowledge of doing that.
>
> Q.    Do you have—did you have any communi-
>       cations with his office after the
>       order was entered on March 4th, 2005,
>       about this case?
>
> A.    Not until October of 2008.

Trumble Deposition Transcript, pp. 43-44.  Copy attached.

5.    The entire case centers around the lack of communication from Mr. Trumble, the only person in the position to know what he had done in relation to the Miller Bankruptcy case, who alleged in his ethics complaint and in his legal malpractice case against Mr. Nace that he was aggrieved by Mr. Nace's actions, when, in fact, there is nothing in this record nor that can be submitted at the time of the hearing to establish Mr. Nace ever knew that he had been formally appointed by Bankruptcy Court Order as counsel for the Trustee.  The following questions and answers demonstrate this fact, by clear and convincing evidence:

> Q.    So at the time that you did have
>       communications with Mr. Nace prior
>       to October of 2008, you didn't have
>       authority to actually employ him, is
>       that correct, because the court had
>       not entered an order allowing you to
>       employ him, correct?
>
> A.    There had not been an order entered
>       allowing him to be employed.

> Q.   And after you had received an order
>       permitting you to employ him you had
>       no correspondence with him whatsoever
>       until October of 2008, correct?
>
> A.   That's correct.

Trumble Deposition Transcript, p. 44.  Copy attached.

6.   Respondent Barry J. Nace did not receive any of Mr. Trumble's correspondence sent to him, Mr. Burke or any other person, prior to the receipt of Mr. Trumble's November 14, 2008 correspondence entitled, "Second Request," to which he promptly responded, in writing, on December 1, 2008.

7.   In spite of the entire failure or lack of communication between Mr. Trumble and Respondent Nace, Respondent Nace began communicating in writing with Mr. Trumble after he actually became aware of the nature of the claim being presented and the circumstances giving rise to the issues presented in Mr. Trumble's correspondence of October 10, 2008, which finally arrived as an attachment to Mr. Trumble's correspondence of November 14, 2010.  In his reply correspondence of December 1, 2008, Respondent Nace revealed his open state of mind and willingness to appropriately respond to Mr. Trumble's inquiry, which correspondence states, in part, "I will attempt to collect the information you want, but I would ask that you send me whatever documentation supporting your

4

statements made in your letter of October 10, 2008 and which gives you the authority to make the request that you made."

8.    Mr. Trumble responded, in writing, by correspondence dated January 5, 2009, and concluded, in a threatening manner, "Your actions have violated your duty to me as a client.  I strongly recommend that you place your malpractice carrier on notice regarding your breach. Furthermore, I will be contacting the appropriate state bars in which you are admitted to report your disregard for the rules of professional conduct as it relates to the representation of me as a trustee with regard to this matter."  It is Respondent Nace's position that such response is not in keeping with an orderly exchange of information and documentation which was appropriately and professionally requested in his correspondence of December 1, 2008, to Mr. Trumble.  Respondent Nace again responded in writing on February 4, 2009, to Mr. Trumble, and explained his position, and Mr. Trumble submitted no further information or documentation and did not respond in any way except by filing the ethics complaint against Respondent Nace and Mr. Burke on July 13, 2009, and by filing a Trustee's Complaint for Breach of Contract and Legal Negligence in the Adversary Proceeding in Ms. Miller's bankruptcy case in October 2010.

9.    Although deposition testimony was provided by Mr. Trumble on March 21, 2012, in the Adversary Proceeding pending in the Bankruptcy Court accusing Respondent Nace of legal malpractice, Mr. Trumble could not and did not provide a definite and clear answer as to how much was due and owing from Ms. Miller's state court medical malpractice action.  It was not until May 3, 2011, that Mr. Trumble advised Respondent Nace and Mr. Burke and their counsel in the legal malpractice action as to the amount owed from the Miller medical malpractice action which was ultimately concluded in March 2008.

10.    The concern with Mr. Trumble's status or designation as a "client" must be tempered and placed in appropriate factual and legal context with the official professional duties imposed upon him as Trustee.  These duties are clearly defined, in part, in the U. S. Department of Justice Handbook for Chapter 7 Trustees, July 1, 2002, and states, in pertinent part:

> The trustee is a fiduciary and represen-
> tative of the estate.  Trustees cannot avoid
> or abdicate their responsibilities by
> employing professionals and delegating to
> them certain tasks.  It is critical that the
> trustee oversees the work performed by
> professionals and exercises appropriate
> business judgment on all key decisions.
>
> The trustee must actively supervise estate
> professionals to ensure prompt and
> appropriate execution of duties, compliance

> with required procedures and reasonable and
> necessary fees and expenses. ...

Handbook for Chapter 7 Trustees, p. 8-24, copy attached.

11.   It is readily apparent from the evidence presented in this case that Mr. Trumble failed to discharge his duties in this matter and failed to do so on the most basic and fundamental aspect of his charge—that being to effectively communicate in a timely manner to Respondent Nace and Mr. Burke that they had been employed pursuant to appropriate order.

12.   Thereafter, Mr. Trumble hired his own firm to represent him in the legal malpractice case pending in the Adversary Proceeding in Bankruptcy Court and now seeks the sum of $62,487.89 as of his most recent filing in the bankruptcy court.

13.   Respondent Nace recently sought and has now received approval of the bankruptcy court to deposit the sum of $12,730.49 in the Court, which amount represents the total amount of the creditor claims presented in Ms. Miller's underlying bankruptcy case originally initiated in September 2004 and discharged by court order in December 2004, and then reopened by Mr. Trumble in January 2005.

14.   The clear and undisputed and longstanding law in West Virginia since 1996 has and continues to be that:

> A charge of malpractice, based on alleged
> actionable negligence before adjudication,

7

> is generally not within the purview of the
> committee on legal ethics and, if used,
> after adjudication, by the committee on
> legal ethics, should clearly show that the
> attorney is unworthy of public confidence
> and is an unfit or unsafe person to be
> entrusted with the duties of a member of
> the legal profession or to exercise the
> provileges [sic] of that profession.

Syl. Pt. 4, *Committee on Legal Ethics v. Mullins*, 159 W.Va. 647,

226 S.E.2d 427 (1976). (Note:  This Syllabus Point and clear

statement of law was cited approvingly by ODC in its reply brief

in *Lawyer Disciplinary Board v. Martin*, 210 W.L. 472903 (W.Va.

2010).)

> 13.  The *Mullins* decision also holds that:
>
> > Charges of isolated errors of judgment
> > or malpractice in the orginary [sic]
> > sense of negligence would normally not
> > justify the intervention of the ethics
> > committee.
>
> *Id* at 430.

Mr. Trumble and ODC have consistently characterized

Respondent Nace's conduct as "legal malpractice" in various

documents filed in this matter as well as the civil action

pending in the Bankruptcy Court.  There is nothing supported by

any evidence seen and reviewed to date to suggest that

Respondent Nace or Mr. Burke did anything grossly negligent,

intentionally or knowingly, which could prove or tend to prove

any ethics rule violation or to subject them to a legal or

factual conclusion that they are "unworthy of public confidence

8

and unfit or unsafe" people to be entrusted with the duties of a member of the legal profession.

14.   The evidence produced and disclosed thus far, together with that evidence to be presented at the hearing scheduled for October 10, 2011, has and will show, at the most, mistake, failed communications, error and/or inattention to the details by Mr. Trumble, Respondent Nace and Mr. Burke.

Therefore, Respondent Nace respectfully requests that:

(a)   He be permitted to defend himself fully against the legal malpractice claim asserted by Mr. Trumble and the Bankruptcy Court without further repercussion from the Lawyer Disciplinary Board;

(b)   The statement of charges filed against him by the Lawyer Disciplinary Board be dismissed upon the Hearing Subcommittee's recommendation; and,

(c)   A finding of sufficient facts be made upon which a holding of law can be recommended that Mr. Trumble is estopped by his conduct and his untimely assertion (2 years - Rule 2.14) of Respondent Nace's violation of any ethics rule and that Mr. Trumble was negligent in his own right and acted in an inequitable and unprofessional manner, all pursuant to the holding in *Hudkins v. State of West Virginia*

9

*Consolidated Public Retirement Board*, 220 W.Va.

275, 647 S.E.2d 711 (2007).


Respectfully submitted,


J. Michael Benninger, Esquire
W. Va. State Bar No. 312
Benninger Law PROFESSIONAL LIMITED LIABILITY COMPANY
P. O. 623
Morgantown, WV  26507
(304) 252-1856
mike@benningerlaw.com
*Counsel for Respondent*

10

Page 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:
BARBARA ANN MILLER,

     Debtor.Case No. 04-3365

                    (Chapter 7)


ROBERT W. TRUMBLE, Trustee of the
Bankruptcy Estate of Barbara Ann Miller,

     Plaintiff,

v.                    AP NO. 10-136

D. MICHAEL BURKE, BARRY J. NACE,
BURKE, SCHULTZ, HARMAN and JENKINSON and
PAULSON & NACE,

     Defendants.


                      MARTINSBURG, WEST VIRGINIA
                      MONDAY, MARCH 21, 2011


DEPOSITION OF:


           ROBERT W. TRUMBLE, ESQUIRE


a witness called for examination by counsel for the Defendants

in the law offices of Burke, Schultz, Harman & Jenkinson,

located at 85 Aikens Center, Martinsburg, West Virginia,

pursuant to a Notice of Deposition when were present on behalf

of the parties:

1      Q.    Do you have correspondence between yourself and Mr.

2  Nace after the order was entered on March 4th, 2005?

3      A.    I do, but not -- but not until probably sometime in

4  2008.

5      Q.    Okay.  If I represent to you that you sent a letter

6  on October 10th, 2008, to Mr. Nace, would you agree that that

7  was your first correspondence to him?

8      A.    Right.  Most of my dealings were with Mr. Burke and

9  his office.

10     Q.    I'm sure Mr. Shultz will ask you these, some of

11  these questions, but you were in fact told by Mr. Burke that he

12  was not involved in that case sometime in 2005, isn't that

13  correct?

14     A.    No, that is not correct.

15     Q.    You had no correspondence until -- until October

16  2008 with Mr. Nace, is that -- that's what you said, correct?

17     A.    I believe so.

18     Q.    Okay.  Did you ever send Mr. Nace a copy of the

19  order allowing you to employ him as special counsel?

20     A.    I don't have any -- I don't have any knowledge of

21  doing that.

22     Q.    Do you have -- did you have any communications with

23  his office after the order was entered on March 4th, 2005, about

24  this case?

Page 44

1      A.     Not until October of 2008.

2      Q.     Do you have a retainer with Mr. Nace or Paulson &

3   Nace --

4      A.     No, I do not.

5      Q.     -- employing him as special counsel in this case?

6      A.     No.

7      Q.     So at the time that you did have communications with

8   Mr. Nace prior to October of 2008, you didn't have authority to

9   actually employ him, is that correct, because the court had not

10  entered an order allowing you to employ him, correct?

11     A.     There had not been an order entered allowing him to

12  be employed.

13     Q.     And after you had received an order permitting you

14  to employ him you had no correspondence with him whatsoever

15  until October of 2008, correct?

16     A.     That's correct.

17     Q.     After -- I'll represent that there was the October

18  8th -- or I'm sorry, October 10th, 2008, letter sent to Mr.

19  Nace, correct?  Let me show you that.

20            MR. NACE:  Go ahead and mark this as the next

21  exhibit, and this has numbers 1004 and 1005.  It's Exhibit 5.

22                           (Whereupon, Exhibit No. 5 was

23                           marked for identification.)

24     A.     Yes, sir.

Wendi Watson, P. O. Box 3355, Shepherdstown, WV 25443  Phone: 304-283-5375



**U.S. Department of Justice**
Executive Office for United States Trustees

# Handbook for
# Chapter 7 Trustees

## *July 1, 2002*
*(includes technical amendments effective January 1, 2005)*
*(includes updated 341 meeting questions effective March 1, 2006)*
*(includes Domestic Support Obligations, effective October 1, 2008)*
*(includes protection of personally identifiable information, effective
    May 1, 2010)*





e.    the proposed arrangements for compensation; and

f.    the professional's connections with the trustee, debtor, creditors, and other parties in interest.

FRBP 2014. The application should be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, including the trustee, their respective attorneys and accountants, the United States Trustee, or any person employed by the United States Trustee. FRBP 2014(a).

Fee sharing arrangements are prohibited. § 504.

The trustee and the professional person should discuss and agree upon the terms and conditions of employment, including the manner of compensation, with the understanding that the court will ultimately set the fee for professional persons and may increase or decrease it depending upon the circumstances, even to the extent of recapturing monies paid as interim fees. § 328(a).

## 4.    SUPERVISION OF PROFESSIONALS

The trustee is a fiduciary and representative of the estate. Trustees cannot avoid or abdicate their responsibilities by employing professionals and delegating to them certain tasks. It is critical that the trustee oversees the work performed by professionals and exercises appropriate business judgment on all key decisions.

The trustee must actively supervise estate professionals to ensure prompt and appropriate execution of duties, compliance with required procedures and reasonable and necessary fees and expenses.

The trustee is advised to pay particular attention to the activities of professionals who are not closely regulated by state authorities or who take physical possession of estate property and funds, such as auctioneers, liquidators, brokers, collection agents and property managers. The general standards for supervising auctioneers (see Chapter 8.M.6 below) apply equally to other professionals who take possession of estate funds and property.

## 5.    TRUSTEE AS ATTORNEY OR ACCOUNTANT FOR THE ESTATE

A trustee, with court approval, may act as an attorney or accountant for the estate, if such employment is in the best interest of the estate. § 327(d). Routine matters may be handled quickly and economically by this kind of representation. However, a trustee should be sensitive to the best interest of each individual estate and any conflict of interest problems that may be posed by acting as an attorney or

## CERTIFICATE OF SERVICE

I, J. Michael Benninger, counsel for Barry J. Nace, Esquire, do hereby certify that on October 4, 2011, the foregoing **Respondent Barry J. Nace's Motion to Dismiss Statement of Charges** was duly served upon counsel of record by depositing true and exact copies thereof in the regular course of the United States Mail, First Class, postage prepaid, addressed as follows:

Debra A. Kilgore, Esquire
Burton Kilgore & Lazenby PLLC
1439 East Main Street, Suite 2
Princeton, WV  24740

Sean D. Francisco, Esquire
317 Market Street
Parkersburg, WV  26101

Jessica H. Donahue
Lawyer Disciplinary Counsel
Office of Disciplinary Counsel
City Center East, Suite 1200C
4700 MacCorkle Avenue, S.E.
Charleston, WV  25304

Ms. Cynthia L. Pyles
24 Sharpless Street
Keyser, WV  26726

Counsel for Barry J. Nace, Esquire